# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KERN HORACE RYAN, | : | CIVIL NO. 3:13-CV-682 |
| Petitioner, | : | (Judge Mariani) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| THOMAS DECKER, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.  Statement of Facts and of the Case

This case involves a habeas corpus petition filed by an immigration detainee and convicted drug trafficker, Kern Ryan. Ryan is a native of Trinidad and Tobago who was convicted of drug trafficking in May 2010 and was sentenced to a minimum term of imprisonment of eleven months and fifteen days to a maximum term of twenty-three months commencing on May 27, 2010. (Doc. 4, Ex. 3.) Some time after his release from custody on this charge, on September 14, 2012, immigration officials took Ryan into immigration custody and served him with a Notice to Appear that charged that he was subject to removal from the United States pursuant to Sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(I) of the Immigration and Naturalization Act, 8 U.S.C.

1227(a)(2)(A)(iii), § 1227(a)(2)(B)(I), based on his May 6, 2010, conviction for the offense of manufacture, delivery, or possession with intent to deliver a controlled substance. (Doc. 4, Notice to Appear Ex. 1). Immigration officials also served Ryan a Notice of Custody Determination which informed him that he would be detained by immigration officials pursuant to § 236 pending a final determination by an immigration judge. (Id., Ex. 4).

On October 11, 2012, Ryan was seen by an immigration judge who considered a request from Ryan for a change in his custody status, but ordered him detained pursuant to the mandatory detention provisions in § 236(c). (Id., Ex. 5). Ryan also appeared before the immigration judge on November 8, 2012, and on November 29, 2012, and on both occasions requested postponements of his removal proceedings in order to obtain legal representation. (Id., Ex. 6). Ultimately, on February 14, 2013, the immigration judge ordered Ryan removed from the United States based on Ryan's concession to the allegations contained in the Notice to Appear. (Id., Ex. 7). Ryan appealed this decision to the Board of Immigration Appeals ("BIA"). (Id., Ex. 8). Immigration officials have filed a motion before the BIA asking for summary affirmance of the immigration judge's February 14, 2013, decision based on the lack of appealable issues. (Id., Ex. 9). Ryan remains in custody, however, while he pursues this appeal.

Displeased by the fact of this continuing detention pending this BIA appeal, a detention whose duration was largely caused by his own litigation tactics, Ryan filed this *pro se* petition for a writ of habeas corpus on March 14, 2013. (Doc. 1.) This petition broadly challenges on statutory and constitutional grounds the ability of immigration officials to continue to hold Ryan while he completes the litigation of this removal case. The Government has filed a response to this petition. (Doc. 4.) Therefore, this matter is now ripe for resolution.

Ryan's detention prior to the entry of a final removal order is governed by a series of evolving statutory and constitutional standards. However, the application of these statutory and constitutional benchmarks to Ryan's case leads to the a single result. Because the period of detention experienced by Ryan during his removal proceedings is required by statute and does not presently offend constitutional due process principles, we recommend that the court deny Ryan's petition at this time without prejudice to renewal of this claim, if warranted, at an appropriate future time.

## II. Discussion

### A. Introduction

In this petition, Kern Ryan, a national of Trinidad and Tobago, and a convicted drug trafficker, seeks to challenge his detention by immigration officials as excessive and unreasonable. While the precise tenor of this complaint is not entirely clear, it

appears that the petitioner believes that this case involves excessive pre-removal detention under the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B); and that his continued detention offends constitutional due process considerations. In addressing this concern, we must determine whether Ryan's detention is permitted by law, and further assess whether the duration of this detention pending the entry of a final removal order offends constitutional due process considerations. In this case, for the reasons set forth below, we find that Ryan's detention is both mandated by statute, and constitutionally permitted. Therefore, we recommend that this petition for writ of habeas corpus be denied.

> **B. Ryan's Detention Pending Entry of A Removal Order Was Compelled By Statute and Does Not Violate Due Process**

At the outset, we will examine the period of pre-removal detention experienced by Ryan, carefully scrutinizing that period of detention to ensure both that it was legally appropriate, and that it was not so excessive as to violate the petitioner's due process rights. In assessing this detention period, we begin by noting that, to the extent that Ryan complains about the duration of this pre-removal detention period, this detention appears to be compelled by statute. Section 1226 of Title, 8, United States Code, directs the Attorney General to detain certain criminal aliens like Ryan pending removal, stating in clear and precise terms as follows:

> ( c ) Detention of Criminal Aliens--(1) Custody.--The Attorney General <u>shall</u> take into custody any alien who.--(B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

By enacting this mandatory detention requirement for a sub-class of criminal aliens awaiting removal from the United States, Congress was responding to specific, immigration concerns caused by the failure to timely deport aliens who had used the liberties conferred by this nation as a license to commit crimes. As the Supreme Court has noted:

> Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens. <u>See, e.g.</u>, Criminal Aliens in the United States: Hearings before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48, p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens alone cost $724 million in 1990). Criminal aliens were the fastest growing segment of the federal prison population, already constituting roughly 25% of all federal prisoners, and they formed a rapidly rising share of state prison populations as well. <u>Id</u>., at 6-9. Congress' investigations showed, however, that the INS could not even *identify* most deportable aliens, much less locate them and remove them from the country. <u>Id</u>., at 1. One study showed that, at the then-current rate of deportation, it would take 23 years to remove every criminal alien already subject to deportation. <u>Id</u>., at 5. Making matters worse, criminal aliens who were deported swiftly reentered the country illegally in great numbers. <u>Id</u>., at 3. The INS' near-total inability to remove deportable criminal aliens imposed more than a monetary cost on the Nation. First, as Congress explained, "[a]liens who enter or remain in the United States in violation of our law are effectively taking immigration opportunities that might otherwise be extended to others." S.Rep. No. 104-249, p. 7

5

(1996). Second, deportable criminal aliens who remained in the United States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention of all criminal aliens, like Ryan, who are convicted of drug trafficking, pending completion of removal hearings. In this case, it appears that Ryan falls within the class of criminal aliens who are subject to the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B). Indeed, Ryan has not disputed his drug conviction at any stage in this process, a conviction that gives rise to mandatory detention by statute. Therefore, by statute, he is subject to mandatory detention pending the entry of a removal order in these proceedings. See Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(alien convicted of drug offenses subject to mandatory detention.)

Nor can Ryan avoid the application of this mandatory detention statute to him by citing the fact that he was not immediately taken into custody by immigration officials when his state drug trafficking sentence concluded. This avenue of attack upon Ryan's detention has been foreclosed by the court of appeals' decision in Sylvain v. Attorney Gen. of U.S., 714 F.3d 150, 157 (3d Cir. 2013), which held that the government's authority to impose mandatory detention "does not depend on its compliance with the 'when ... released' deadline. The text states that immigration

officials 'shall take into custody any alien who [has committed various crimes] when the alien is released.' 8 U.S.C. § 1226(c)(1). The text does not explicitly remove that authority if an alien has already left custody. We are loath to interpret a deadline as a bar on authority after the time has passed—even when the word 'shall' appears in the text." Id.

Having determined as a matter of statutory construction that Ryan is subject to this mandatory detention, we further conclude, on the unique facts of this case, that Ryan cannot sustain a constitutional due process challenge to this mandatory detention at this time. At the outset, to the extent that Ryan seeks to challenge the mere fact of his detention on due process grounds, that avenue of attack is now foreclosed by the United States Supreme Court's decision in Demore v. Kim, 538 U.S. 510 (2003). In Demore, the court addressed the issue of whether §1226(c)(1)(B)'s mandatory detention provision violates due process. In terms that are equally applicable here, the court held that Congress acted within its broad authority to regulate immigration matters when it imposed mandatory detention on this narrow group of criminal aliens facing removal from the United States. As the court observed:

> In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." Mathews v. Diaz, 426 U.S. 67, 79-80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) . . . . And, since Mathews, this court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens. See, e.g.,

7

> Zadvydas, 533 U.S., at 718, 121 S.Ct. 2491 (KENNEDY, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens"); Reno v. Flores, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("Thus, 'in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens" ' ") (quoting Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), in turn quoting Mathews, supra, at 79-80, 96 S.Ct. 1883)); United States v. Verdugo-Urquidez, 494 U.S. 259 (1990).

Demore, 538 U.S. at 521-522.

Acknowledging the authority of Congress in this field, the court then held that: "Detention during removal proceedings is a constitutionally permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet, while reaching the conclusion that mandatory detention of certain criminal aliens did not violate due process, the court emphasized the very brief duration of most removal proceedings which rarely exceeded five months, id. at 530, and noted that the six-month delay experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. Id. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the court held that the fact of this mandatory detention did not violate due process.

Following Demore courts have frequently rebuffed efforts by criminal aliens to broadly challenge their detention pending removal. See, e.g., Tavares v. Attorney General, 211 F. App'x 127 (3d Cir. 2007); Slebo v. District Director, No. 09-1335,

8

2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263(M.D. Pa. Jan. 9, 2007)(Conner, J.). Yet, these decisions rejecting broad due process challenges to the fact of mandatory pre-removal detention of criminal aliens do not wholly resolve the legal issues presented by this petition. Consideration of the holding in Demore constitutes only the first part of our responsibility and analysis when reviewing claims like those presented by Ryan.

Demore holds that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Thus, while Demore addressed the due process issues that arise from the mere fact that, for certain criminal aliens, detention pending removal is mandatory, courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009).

9

In this factual context, excessive detention claims brought by aliens who are held in pre-removal detention are judged by a "two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill § 1226's purposes." Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269-70 (3d Cir. 2012). In conducting this two step analysis the courts have eschewed any simple bright-line rules defining what constitutes an unreasonable delay, Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011), but several key benchmarks have defined the contours of this constitutional protection against excessive detention pending removal hearings.

First, in assessing these claims, we must look to the duration of the detention. Thus, in general, pre-removal detentions spanning a period of months do not present substantial constitutional issues. See e.g., Demore, 538 U.S. at 531(6 months); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one year detention); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.)(8 months); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.)(18 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months). While periods of detention which significantly

exceed one year may trigger constitutional concerns; see, e.g., Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269-70 (3d Cir. 2012)(4 years); Diop v. ICE/Homeland Sec., 656 F.3d 221, 234 (3d Cir. 2011)(35 months); Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005)(2 years 8 months); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004)(500 days); Prince v. Mukasey, 593 F. Supp.2d 727 (M.D. Pa. 2008)(16 months); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009)(9 and 20 months); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009)(2 years), detentions periods of up to two years have been sustained by the courts where a criminal alien is subject to mandatory detention and much of the pre-removal delay is a function of that criminal alien's litigation decisions during removal proceedings. See e.g., Jah v. Attorney General, 258 F.App'x 394 (3d Cir. 2007)(17 months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d Cir. 2007)(24 months detention); Adler v. Dep't of Homeland Security, No. 09-4093, 2009 WL 3029328 (S.D.N.Y. sept. 22, 2009)(15 months detention); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009)(15 months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one year detention); Rodney v. Mukasey, No. 08-1386, 2009 WL 427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.)(18 months).

As these cases reveal, however, the analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay. Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. Where the delay is attributable to actions taken by the alien in the course of litigating the removal proceedings, courts typically will not hold the government accountable for that delay when conducting a due process analysis. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009)(delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F.App'x 394 (3d Cir. 2007)(17 months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d Cir. 2007)(24 months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one year detention held attributable to alien's litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009)(15 months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Moreover, any consideration of an excessive pre-removal delay claim brought by a criminal alien who is pending removal from the United States should take into account the fact that, upon entry of a final removal order, different statutory and due process protections come into play, protections designed to ensure that aliens who

have been ordered removed are not held in custody for an unreasonable period of time. Thus, once a final order of removal is entered, the due process protections afforded to aliens by Zadvydas v. Davis, 533 U.S. 678 (2001) apply. See Matthias v. Hogan, No. 07-1987, 2008 WL 913522 (M.D. Pa. March 31, 2008). Under Zadvydas aliens subject to such final removal orders typically must either be removed, or be given bail consideration, within six months. The availability of this relief from excessive detention following the entry of a final removal order, coupled with what is frequently the brief duration of removal proceedings, greatly reduces any due process concerns resulting from the duration of the mandatory detention of aliens pending the completion of removal proceedings.

In this case, our review of these fundamental due process considerations leads us to conclude that the pre-removal delay experienced by Ryan presently does not offend due process. Immigration proceedings in this case began in September 2012, and were initially completed by February 2013, within a period of four months. Moreover, much of this four month delay was directly attributable to requests by Ryan to continue his removal proceedings.

The ensuing four months delay, from February to June 2013, are the product of appeals pursued by Ryan to the BIA challenging this removal order. Thus, the total period of delay here is only approximately 8 months, and this delay has largely been

a function of Ryan's litigation choices and decisions in these removal proceedings. While Ryan's litigation choices may be understandable, the delays caused by those choices should not be held against the Government when assessing this relatively brief period of pre-removal delay. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009)(delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F.App'x 394 (3d Cir. 2007)(17 months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d Cir. 2007)(24 months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one year detention held attributable to alien's litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009)(15 months detention) Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

Thus, an assessment of the factors which govern our due process analysis of Ryan's pre-removal detention militates against the petitioner. At the outset, on the unique facts of this case the duration of this detention pending removal, standing alone, does not raise grave concerns particularly since much of this period involved delays instigated by Ryan. Further, the continued duration of this detention appears both fixed and finite. Thus, this removal case should be promptly resolved by the BIA and once the appellate litigation in this matter has drawn to a close, Ryan's detention will be governed by a different, more rigorous, set of statutory and constitutional rules,

rules designed to avoid further undue delay. First, by statute, once an alien like Ryan is subject to a final removal order, he may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens like Segura provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively. See 8 U.S.C. § 1231(a)(1)(B)(I).

Upon the entry of this final order, Ryan will also have further constitutional protections against undue delay and detention. For aliens awaiting removal, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. §

1231(a)(1)(A). Beyond this initial 90-day period the court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this

16

90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders must either be removed, or be given bail consideration.

Thus, in the instant case, Ryan's pre-removal detention is mandated by statute, and is constitutionally permissible. Moreover, that pre-removal detention will likely soon draw to a close given the current posture of these immigration proceedings, at which time, if the removal order is confirmed, Ryan will be entitled to the protection of different statutory and constitutional safeguards designed to ensure his timely removal from the United States.

Accordingly, on these facts we find that Ryan simply has not, at present, made a valid claim that he has been subjected to an unconstitutionally excessive period of pre-removal delay. Therefore, this petition should be denied without prejudice to future requests when, and if, Ryan's continued detention becomes sufficiently prolonged to trigger constitutional concerns.

### III. **Recommendation**

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition (Doc. 1.) be DENIED without prejudice to renewal at such time, if any, as the delay and detention become

unreasonable and excessive.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of June 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
